1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LISA MONAGHAN,

11            Plaintiff,                        No. CIV S-03-2019 KJM

12      vs.

13   JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15            Defendant.                        ORDER
     _____/
16
             Plaintiff seeks judicial review of a final decision of the Commissioner of Social
17
     Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under
18
     Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will grant
19
     plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary
20
     judgment, and remand for immediate payment of benefits.
21
     I.  Factual and Procedural Background
22
             In a decision dated February 19, 2003, the ALJ determined plaintiff was not
23
     disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals
24

25
             [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
26   Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid

                                                     1

1   Council denied plaintiff's request for review.  The ALJ found that prior to September 30, 1995,

2   the date of last insured, plaintiff had severe optic neuritis and occasional right (dominant) below-

3   the-elbow numbness, but that the impairments or combination thereof do not meet or medically

4   equal a listed impairment; plaintiff's testimony is credible; plaintiff could perform her past

5   relevant work; and plaintiff is not disabled.  Administrative Transcript ("AT") 6-7.  Plaintiff

6   contends the ALJ improperly assessed the severity of plaintiff's impairments, improperly

7   discredited her testimony, improperly rejected the opinion of a treating physician, and posed

8   incomplete hypotheticals to the vocational expert.

9   /////

10  /////

11  _____

12  to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
    is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) &
    1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
    following summarizes the sequential evaluation:

15
            Step one:  Is the claimant engaging in substantial gainful
16      activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
17          Step two:  Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not disabled is
18      appropriate.
            Step three:  Does the claimant's impairment or combination
19      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically
20      determined disabled.  If not, proceed to step four.
            Step four:  Is the claimant capable of performing his past
21      work?  If so, the claimant is not disabled.  If not, proceed to step
        five.
22          Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
23      disabled.  If not, the claimant is disabled.  _____

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

1  II.  Standard of Review

2          The court reviews the Commissioner's decision to determine whether (1) it is

3  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

4  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

5  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

6  Substantial evidence means more than a mere scintilla of evidence, but less than a

7  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

8  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

9  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

10  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

11  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

12  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

13  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

14  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

15  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

16  substantial evidence supports the administrative findings, or if there is conflicting evidence

17  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

18  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

19  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

20  1335, 1338 (9th Cir. 1988).

21  III.  Analysis

22          Plaintiff assigns four errors to the ALJ's analysis.  Dispositive, however, is the

23  challenge to the ALJ's assessment of plaintiff's credibility.  The ALJ determines whether a

24  disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the

25  proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th

26  Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v.

3

Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for

the disbelief").

        In evaluating whether subjective complaints are credible, the ALJ should first

consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

(1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

the ALJ in determining whether the alleged associated pain is not a significant nonexertional

impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

1999).

/////

/////

4

1    Plaintiff testified that during the relevant time period,[2] she needed to lie down

2  during the day at least five days a week, her energy level was nonexistent, she was confined to a

3  wheelchair, she had pain from head to toe with muscle spasms, severe deep leg pains, paralysis

4  and numbness, she needed help with even the most basic of tasks such as hygiene, showering and

5  brushing her hair, she had severe headaches constantly and could not see out of her right eye and

6  she lost her balance all the time.  AT 372-375.  The ALJ did not assess the credibility of the

7  above-described testimony under the standards set forth above, expressly finding there was "no

8  reason to discredit [plaintiff's] testimony."  AT 16.  Rather, the ALJ found credibility was "not a

9  factor insofar as the allegations of multiple sclerosis-related complaints prior to September 30,

10  1995, because of the absence of a medically determinable impairment which could reasonably

11  have accounted for those complaints at that point in time."  AT 16.

12    This finding is in error.  The ALJ erroneously relied on the lack of a definitive

13  diagnosis[3] of multiple sclerosis in 1995 as the basis for the finding there was no medically

14  determinable impairment that could account for plaintiff's symptoms as she described them for

15  the relevant time period.  However, in so doing, the ALJ ignored specific signs and laboratory

16  findings from 1995 that support plaintiff's complaints.  See 20 C.F.R. § 404.1528 (statements of

17  plaintiff must be supported with signs shown by medically acceptable clinical diagnostic

18  ─────────────────

19    [2]  Plaintiff's date of last insured for disability benefits is September 30, 1995.  Plaintiff
must demonstrate disability on or before this date.  AT 12.

20
21    [3]  Although the plaintiff in a Social Security case sometimes erroneously argues that a
medical diagnosis of a physical or mental condition necessarily compels a conclusion that an
impairment exists, the obverse, that a definitive medical diagnosis must be made before an

22  impairment can be found, is equally untrue.  The governing regulations employ the term
"impairment," not "diagnosis."  See generally 20 C.F.R. §§404.1505 et seq.  An "impairment

23  must result from anatomical, physiological, or psychological abnormalities which can be shown
by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.  It

24  is true that a plaintiff claiming disability at step three of the sequential analysis by meeting
Listing 11.09 must first establish a diagnosis of multiple sclerosis.  The failure to meet or equal

25  that listing, however, does not preclude a finding of neurologic impairment at step two of the
sequential analysis.

26

1  techniques and laboratory findings by accepted laboratory diagnostic techniques).  Plaintiff was

2  diagnosed in 1995 with retrobulbar neuritis.  AT 124, 127, 132, 143.  The MRI scan of May 31,

3  1995 was "suspicious" if not abnormal.  AT 127, 130-131 (enhancement along the optic nerve or

4  nasal to the optic nerve on the right side), 361 (two non-specific T2-brights foci in the corpus

5  callosum).  In July 1995, plaintiff was found to have slight pallor of the right optic nerve and her

6  cranial nerves were decreased on the right greater than the left on  I, V, VII, and VIII.  AT 126.

7  All of these signs and laboratory findings are consistent with plaintiff's objective complaints of a

8  neurological impairment even if a definitive diagnosis of multiple sclerosis could not be made in

9  1995.[4]  See Merck Manual 1474-76 (Seventeenth Ed.) (most common presenting symptoms and

10  signs of multiple sclerosis include paresthesia, retrobulbar optic neuritis, stiffness or unusual

11  fatigability of a limb, minor gait disturbances, optic nerve atrophy with pallor, numbness--signs

12  often occur months or years before disease is recognized; MRI may show plaques).  Plaintiff's

13  testimony is also supported by the medical opinions of record.[5]  See, e.g., AT 127 (probably

14  demyelinating disease), 361-362  (right eye pain, blurry vision, left-sided weakness, numbness,

15  pallor on right optic nerve, optic neuritis, and abnormal MRI compatible with multiple sclerosis

16  but insufficient to definitively diagnosis under Poser's criteria), 44, 356 (probable multiple

17  sclerosis in 1995 or possibly earlier).  Plaintiff's testimony also is consistent with the subjective

18  symptoms reported in the medical records and by her husband.  AT 84, 87, 121, 124, 125, 142-

19  143, 237, 264; see 20 C.F.R. § 404.1528(a) (medical findings consist of symptoms, signs and

---

[4]  A definitive diagnosis of multiple sclerosis requires two separate neurologic episodes with clinically confirmed findings separated by at least one month.  AT 361-362.  Because of the relapsing/remitting nature of the disease and a lack of insurance coverage, a definitive diagnosis was not made until 1999.  AT 229, 373-374.

[5]  Plaintiff also challenges the ALJ's analysis of Dr. Waubant's opinion, a treating physician who saw plaintiff after the relevant time period.  The ALJ did not reject Dr. Waubant's opinion but merely noted Dr. Waubant could not make a retrospective definitive diagnosis.  AT 13, 15.  It appears the ALJ ignored the subsequently rendered opinion of Dr. Waubant that plaintiff had probable multiple sclerosis in 1995 or possibly earlier.  AT 44.  As discussed above, the lack of a definitive diagnosis of multiple sclerosis cannot support a finding plaintiff had no neurological impairment during the relevant time period.

1  laboratory findings); see also Smolen, 80 F.3d at 1284-85 .  Because there were objective signs

2  and laboratory findings consistent with the physical impairments testified to by plaintiff, the

3  ALJ's rejection of plaintiff's testimony that she suffered debilitating symptoms in 1995 is in

4  error.  See 20 C.F.R. § 404.1529.

5  　　　　　The remaining question is whether to remand this case to the ALJ or to order the

6  payment of benefits.  "The decision whether to remand the case for additional evidence or simply

7  to award benefits is within the discretion of the court."  Stone v. Heckler, 761 F.2d 530, 533 (9th

8  Cir. 1985).  Generally, the court will direct the award of benefits "in cases where no useful

9  purpose would be served by further administrative proceedings or where the record has been

10 thoroughly developed."  Varney v. Secretary of Health and Human Services, 859 F.2d 1396,

11 1399 (9th Cir. 1988).

12 　　　　　In this case, remand for immediate payment of benefits is appropriate.  The ALJ

13 failed in his duty to properly assess plaintiff's credibility and the court declines to remand the

14 action for further credibility findings.  Plaintiff's testimony, if credited, is inconsistent with the

15 ability to perform work-related activities on a sustained basis of 8 hours a day, 5 days a week.

16 See SSR 96-9p.  No further development of the record is necessary.  For the foregoing reasons,

17 this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for immediate payment

18 of benefits.

19 /////

20 /////

21 /////

22 /////

23 /////

24 /////

25 /////

26 /////

1    _____Accordingly, IT IS HEREBY ORDERED that:

2        1.  Plaintiff's motion for summary judgment is granted.

3        2.  The Commissioner's cross-motion for summary judgment is denied.

4        3.  This action is remanded to the Commissioner for immediate payment of

5    benefits.

6    DATED:  September 30, 2005.

7

8    _____
     UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    006/monaghan.ss